UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VENTURA MENDOZA, ) | |
| ) | |
| Plaintiff, ) | Case No. 17-cv-3144 |
| ) | |
| v. ) | Hon. Jorge L. Alonso |
| ) | |
| OFFICER HERRERA, ) | |
| OFFICER FITZPATRICK, and ) | |
| SERGEANT IBARRA, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

After being denied his request to have painful handcuffs removed, plaintiff Ventura Mendoza ("Mendoza") filed against defendants Officer Herrera, Officer Fitzpatrick and Sergeant Ibarra a complaint seeking relief under § 1983. Defendants move for summary judgment. For the reasons set forth below, the Court grants defendants' motion [66] for summary judgment.

**I.    BACKGROUND**

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. *See McCurry v. Kenco Logistics Services, LLC*, 942 F.3d 783, 790 (7th Cir. 2019) ("We take this opportunity to reiterate that district judges may require strict compliance with local summary-judgment rules."). Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact undisputed. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with

admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). The Court does not consider facts the parties failed to include in their statements of fact, because to do so would rob the other party of the opportunity to show that the fact is disputed. The Court notes that plaintiff responded to defendants' statement of facts but did not submit his own statement of facts. The following facts are undisputed unless otherwise noted.

On May 17, 2016, plaintiff was a pre-trial detainee at the Cook County Jail. He was housed in Division 9, the Jail's maximum-security division.

On that day, plaintiff, like many other detainees, appeared at a hearing at the Leighton Criminal Courthouse. The Jail's policy was to handcuff all detainees for transport to and from the courthouse, and Division 9 detainees were generally handcuffed with bluebox handcuffs for transport. After plaintiff's hearing, he was placed in regular handcuffs and taken to a basement holding cell.

Once plaintiff was in the basement holding cell, plaintiff's regular handcuffs were removed, and he was placed in bluebox handcuffs. At the time he was placed in bluebox handcuffs, plaintiff did not complain. Plaintiff did not notice until later that the handcuffs were painful. None of the defendants was involved in placing plaintiff in the bluebox handcuffs. Nor were defendants involved with transporting plaintiff back to Division 9.

It was only once plaintiff was returned to Division 9 that defendants had any interaction with plaintiff. Each defendant was assigned to the Division 9 holding cell, which is where the detainees who had been to court were taken before being scanned in and returned to their cells. Generally, a detainee was returned to his cell within five to ten minutes, but, on May 17, 2016, plaintiff was there for a longer period of time. Plaintiff testified that there were about fifteen

detainees in the holding cell waiting to be returned to their cells. (Plf's Dep. at 35/Docket 67-4 at 36).

Plaintiff testified that when he arrived in the Division 9 holding cell, he asked Officer Fitzpatrick (who was outside the cell) to remove his handcuffs because they hurt. (Neither of the other two defendants was present.) About fifteen minutes later, plaintiff asked Officer Herrera (who also was outside the cell) to remove his handcuffs, because they hurt. Officer Herrera told plaintiff to wait and said something else that plaintiff could not hear due to the noise level in the holding cell. (Neither of the other two defendants was present.) At some point, plaintiff asked Sergeant Ibarra to remove his handcuffs, because they hurt. (Neither of the other two defendants was present.) Plaintiff did not ask any of the defendants for medical treatment. At some point (the parties do not say how long it took), plaintiff was returned to his cell and the handcuffs were removed.

In subsequent days, plaintiff sought medical treatment for his wrist. On May 19, 2016, plaintiff told a nurse he had a little pain. The nurse observed no swelling or redness and noted a normal range of motion. On June 29, 2016, a nurse noted a lack of swelling and a normal range of motion in plaintiff's wrist. Plaintiff later had an MRI, and the doctor noted that plaintiff's tendons were normal and that the "median and ulnar nerves demonstrate[d] normal size and signal intensity." That doctor also noted "the possibility of ulnar impaction syndrome." A doctor who performed an EMG noted "no electrophysiologic evidence of nerve injury."

Plaintiff timely filed this suit, and defendants have moved for summary judgment.

**II.    STANDARD ON A MOTION FOR SUMMARY JUDGMENT**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

56(a).  When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party.  *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018).  Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party."  *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

### III. DISCUSSION

Plaintiff seeks relief under §1983 for defendants' alleged violation of his constitutional rights.

The constitutional rights of pretrial detainees derive from the Due Process Clause of the Fourteenth Amendment, rather than from the Eighth Amendment's prohibition on cruel and unusual punishments.  *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015); *see also Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979) ("A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. . . .  Under such circumstances, the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.").

A pretrial detainee attempting to establish excessive force must show that "the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).  That same objective reasonableness standard applies

4

to detainees challenging medical care or conditions of confinement.  *Hardeman v. Curran*, 933 F.3d 816, 822 (7th Cir. 2019).  In *Kingsley*, the Supreme Court said:

> Objective reasonableness turns on the 'facts and circumstances of each particular case.'  A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.  A court must also account for the 'legitimate interests' that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'  *Bell v. Wolfish*, 441 U.S. 520, 547 . . . (1979).
>
> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used:  the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of the force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397 (citations omitted).

Objective reasonableness is a pure question of law.  *Scott v. Harris*, 550 U.S. 372, 381 n. 8 (2007) ("the reasonableness of [defendant's] actions . . . is a pure question of law.") (Fourth Amendment case); *Phillips v. Community Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012) ("Objective reasonableness of force is a legal determination rather than a pure question of fact for the jury to decide.  We defer to a jury's determination of what occurred during an arrest or whose testimony is credible.  But . . . we must independently review the jury's interpretation of what is reasonable under the Fourth Amendment.").[1]  Accordingly, where the facts are not in dispute, summary judgment is appropriate on the question of objective reasonableness.

---

[1] These are Fourth Amendment cases, but excessive force claims under the Fourth Amendment are judged by the same reasonableness standard.  *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014).  Consideration of objective reasonableness under the Fourth Amendment requires consideration of many of the same factors.  *See Plumhoff*, 572 U.S. at 775 ("[w]e analyze this question from the perspective 'of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'  We thus 'allo[w] for the fact that police officers are often forced to make split-

The Court agrees with defendants that no jury could conclude that plaintiff was subjected to objectively unreasonable force. The Seventh Circuit has concluded that some discomfort to an arrestee from handcuffs does not constitute excessive force, where the arrestee does not elaborate as to the degree of pain or injury. *Tibbs v. City of Chi.*, 469 F.3d 661, 665-66 (7th Cir. 2006) ("Tibbs bases his excessive use of force claim entirely on his allegation that he complained to [defendant] that his handcuffs were too tight and [defendant] refused to loosen them. . . . Tibbs likely suffered some discomfort and pain from handcuffs that [defendant] applied somewhat too tightly; Tibbs complained to [defendant] once about his handcuffs without elaborating on any injury, numbness, or degree of pain[.]").

This case is similar to *Tibbs* in that plaintiff's complaint was limited to asking for the handcuffs to be removed due to pain. In this case, when plaintiff was placed (by someone other than these defendants) in bluebox handcuffs after his court appearance, he did not immediately complain about pain, because it was only later, when he returned to the holding cell in Division 9, that he noticed pain. At that point, he asked each defendant separately (and without the other defendants' hearing) to remove his cuffs, because they hurt. True, he made the request three times, but, from the perspective of each defendant, plaintiff asked only once. Because plaintiff did not request medical attention or otherwise mention a preexisting injury that could have been exacerbated by handcuffs, no reasonable jury could conclude that it was objectively unreasonable to leave plaintiff in handcuffs. This would be true of any arrestee who was not a flight risk. *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) ("an officer may not

---

second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'") (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

6

knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury").

Plaintiff, though, was not a mere arrestee who presented no risk of flight or injury. Plaintiff was a maximum-security detainee who was in the process of being transported back from a court appearance, along with other maximum-security detainees. He was waiting, along with about 15 other maximum-security detainees, to be returned to his cell. From the perspective of the officers, it was important to keep the detainees in handcuffs, not just to protect themselves but also to protect the detainees from each other. The Jail had a policy of placing maximum-security detainees in bluebox handcuffs for such transfers. That was a reasonable precaution, for the safety of the officers and the detainees, when moving multiple maximum-security detainees, some of whom may have been violent. This Court, when considering objective reasonableness, "must also account for the 'legitimate interests' that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Kingsley*, 576 U.S. at 397 (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)). Because plaintiff was a maximum-security detainee in the process of being returned to his cell (along with other detainees) and because his complaints were only general (i.e., without mentioning known injuries that could be exacerbated by handcuffs), it was objectively reasonable as a matter of law to keep plaintiff in those handcuffs.

Defendants are entitled to judgment as a matter of law on plaintiff's §1983 claim.

### *Qualified immunity*

In any case, the Court agrees with defendants that they are entitled to qualified immunity. If the Seventh Circuit or the Supreme Court has concluded that it is a violation of a maximum-

security detainee's constitutional rights to be left in handcuffs after making a general pain complaint while he is waiting to be returned to his cell along with other detainees, this Court is not aware of it; and the plaintiff (who bears the burden) has not cited it.

Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, __ U.S. __, 136 S.Ct. 305, 308 (2015) (reversing denial of qualified immunity in an excessive force case). When considering whether a constitutional right is clearly established, a court must not define the right at a high level of generality; rather "the clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, __ U.S. __, 139 S.Ct. 500, 503 (2019) (reversing and remanding denial of qualified immunity in excessive force case). The Supreme Court has explained:

> [I]t does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in defendant's shoes would have understood that he was violating it.

*Kisela v. Hughes*, __ U.S. __, 138 S.Ct. 1148, 1153 (2018). The Supreme Court has also provided examples of the correct inquiry. As the Supreme Court explained in *Mullenix* about the question in another case,

> [t]he correct inquiry, the Court explained, was whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the 'situation [she] confronted': whether to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight.'

*Mullenix*, 136 S.Ct. at 309 (quoting *Brousseau v. Haugen*, 543 U.S. 194, 199 (2004)).

8

The Supreme Court has emphasized:

> Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue.

*Kisela v. Hughes*, __ U.S. __, 138 S.Ct. 1148, 1153 (2018) (reversing denial of qualified immunity to officer who, concerned for the safety of a person nearby, shot a woman who was holding a knife she had just hacked into a tree and "whose behavior was erratic enough to cause a concerned bystander to call 911 and . . . flag down [the officer]") (quoting *Mullenix*, 136 S.Ct. at 309). In *Emmons*, the Supreme Court again noted "'[W]e have stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment.'" *Emmons*, 139 S.Ct. at 504 (citation omitted).

It is the plaintiff who has must show that a right is clearly established, and, to do so, the "plaintiff must demonstrate that existing caselaw at the time of the events in question 'placed the statutory or constitutional question beyond debate.'" *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011)); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994) ("The plaintiff bears the burden of establishing the existence of a clearly established constitutional right."). The identified case must be from the Seventh Circuit or the Supreme Court. *Day v. Wooten*, 947 F.3d 453, 462 (7th Cir. 2020) ("We have conclusively stated that district court opinions cannot clearly establish a constitutional right because they are not binding precedential authority.").

In response to defendants' motion for summary judgment as to qualified immunity, plaintiff does not identify a case that clearly establishes that his constitutional rights were violated. The closest he comes is earlier in his brief, when he cites *Stainback*, 569 F.3d 767. The Seventh Circuit has said, "*Stainback* only clearly establishes the right to have a *known* injury

9

or condition considered, together with other circumstances, by officers when handcuffing." *Day*, 947 F.3d at 463. Here, plaintiff has put forth no evidence that he had a known injury or condition affected by the handcuffs, and he put forth no evidence that he made such condition known to defendants. Rather, plaintiff has put forth evidence only that he asked each defendant (separately) to remove his handcuffs, because they hurt. Plaintiff did not ask for medical treatment or otherwise describe a known injury that could have been exacerbated by the handcuffs. Furthermore, plaintiff was not an arrestee, as in *Stainback*, but a maximum-security detainee who was waiting to be transported back to his cell, along with 15 other detainees. The amount of force that is reasonable during that scenario is greater than the amount of force that is reasonable with an arrestee who is not a flight risk. Plaintiff has not cited a Seventh Circuit or Supreme Court case concluding that it was a violation of such a detainee's constitutional rights to have been handcuffed during a transfer of multiple detainees merely because he made a general mention of handcuff pain.

Accordingly, defendants are entitled to summary judgment on their qualified immunity defense.

For these reasons, the Court grants defendants' motion for summary judgment.

## IV. CONCLUSION

For all of these reasons, the Court grants defendants' motion [66] for summary judgment. Defendants are granted summary judgment on plaintiff's claim. Civil case terminated.

**SO ORDERED.**                                        **ENTERED: July 14, 2020**

**HON. JORGE ALONSO**
**United States District Judge**